**GILLDORN SAVINGS ASSOCIATION, Gilldorn Corporation, and Gilldorn Mortgage Midwest Corporation, Plaintiffs-Appellees,**

v.

**COMMERCE SAVINGS ASSOCIATION, Defendant-Appellant.**

No. 85–3169.

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1986.

Decided Oct. 24, 1986.

As Amended on Denial of Rehearing Jan. 15, 1987.

Jeffrey Lennard, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for defendant-appellant.

Stephen E. Smith, Siemon, Larsen & Purdy, Chicago, Ill., for plaintiffs-appellees.

Before WOOD and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant Commerce Savings Association ("Commerce") appeals the district court's order, 626 F.Supp. 650, enjoining it from prosecuting an action in Texas against plaintiffs Gilldorn Savings Association, Gilldorn Corporation, and Gilldorn Mortgage Midwest Corporation (collectively "Gilldorn") on the ground that the Texas action should have been brought as a compulsory counterclaim in Gilldorn's Illinois action against Commerce. Gilldorn had previously moved for dismissal in the Texas action and had made the compulsory counterclaim argument, along with several other arguments, unsuccessfully. Gilldorn then moved for an injunction in the Illinois action based solely on the compulsory counterclaim argument. The Illinois district court decided that the Texas decision on Gilldorn's dismissal motion was not a final judgment for collateral estoppel purposes. The district court then determined that Commerce's Texas action should have been brought as a compulsory counterclaim in the Illinois action and therefore enjoined Commerce from further prosecution of the Texas action. Because the Illinois district court should have given collateral estoppel effect to the Texas district court's denial of Gilldorn's dismissal motion, we reverse the Illinois district court's grant of an injunction.

## I.

In June 1983, Commerce sold the Percy Wilson Mortgage and Finance Company ("PWM," now renamed Gilldorn Mortgage Midwest Corporation and one of the plaintiffs-appellees here) to Gilldorn pursuant to a Stock Purchase Agreement executed by Commerce, Gilldorn Savings Association (the "Association") and Gilldorn Corpora-

tion. In May 1984, Gilldorn informed Commerce that it was experiencing financial difficulty. Commerce agreed to exchange the five million dollar Gilldorn Savings Association subordinated debenture Commerce had acquired in the sale of PWM for five million dollars of the Association's preferred stock.

On January 31, 1985, Gilldorn sued Commerce in an Illinois district court seeking damages for fraud, securities violations, and breach of warranty allegedly committed by Commerce in selling PWM to Gilldorn in July 1983.[1] On February 13, 1985, Commerce filed an action in Texas against Gilldorn seeking rescission of the May 1984 exchange of Association subordinated debentures for preferred stock.[2]

In April 1985, Gilldorn moved to dismiss Commerce's Texas action pursuant to Fed. R.Civ.P. 13(a) and 12(b)(6). Gilldorn's motion contended that Commerce's claims in the Texas action could only have been brought as compulsory counterclaims in the Illinois action and that each count of Commerce's complaint failed to state a claim for various reasons. The Texas district court denied Gilldorn's motion to dismiss on September 30, 1985. On October 11, 1985, Gilldorn filed a motion in the Illinois district court to enjoin Commerce from further prosecution of the Texas action. Gilldorn based its motion on the compulsory counterclaim argument. Commerce responded by arguing that Gilldorn was collaterally estopped from relitigating the compulsory counterclaim issue, that as a matter of judicial comity the Illinois court should refrain from enjoining the Texas action, and that Commerce's claims in the Texas action are not counterclaims. On November 19, 1985, the Illinois district

court granted Gilldorn's motion and enjoined Commerce from further prosecuting the Texas action. The Illinois court decided that the Texas court's decision was not a final judgment and therefore not entitled to collateral estoppel effect, that the doctrine of judicial comity was inapplicable, and that Commerce's claims in Texas were compulsory counterclaims which should have been brought in the Illinois action.

Commerce appeals from the injunction. Commerce argues that the Texas court's denial of Gilldorn's motion to dismiss was a final resolution of the compulsory counterclaim issue which collaterally estops Gilldorn from relitigating that issue in Illinois. Commerce also argues that the Illinois district court erred in deciding that Commerce's claims in the Texas action are compulsory counterclaims which should have been raised in the Illinois action.

## II.

"Collateral estoppel, which is also known as issue preclusion, generally prevents a party from relitigating an issue the party has already litigated and lost." *Ferrell v. Pierce,* 785 F.2d 1372, 1384 (7th Cir.1986). "In general, collateral estoppel precludes relitigation of issues in a subsequent proceeding when: (1) the party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical." *Kunzelman v. Thompson,* 799 F.2d 1172, 1176 (7th Cir.1986). *Accord County of Cook v. Midcon Corp.,* 773 F.2d 892, 898 (7th Cir.1985). The policy underlying the doctrine is that "one fair opportunity to litigate an issue is enough." *Bowen*

---

**1.** Gilldorn's complaint in the Illinois action has three counts: (1) breach of express warranties in the Stock Purchase Agreement; (2) fraudulent misrepresentation through nondisclosure; and (3) violation of section 10(b) of the Securities Exchange Act of 1934. Gilldorn's complaint alleges that Commerce stripped PWM of valuable assets before the sale, and lists fifty-two actual and potential losses, liabilities, and litigation which Commerce allegedly failed to disclose to Gilldorn in connection with the sale.

**2.** Commerce's complaint in the Texas action alleges that Gilldorn's misrepresentations violated section 12 of the Securities Act of 1933 and the Texas Securities Act, Tex.Rev.Civ.Stat.Ann. art. 581–33. Commerce seeks rescission of the exchange and recovery of the total principal and interest due on the subordinated debentures which Commerce exchanged for preferred stock.

*v. United States,* 570 F.2d 1311, 1322 (7th Cir.1978). The party asserting estoppel has the burden of establishing which issues were actually determined in his favor in the prior action. *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1518 (9th Cir.1985). *See Jones v. City of Alton,* 757 F.2d 878, 885 (7th Cir.1985).

It is undisputed that the parties in this action also were involved in the Texas litigation and that the identical compulsory counterclaim issue was raised and actually litigated in the Texas action. The two issues remaining are: (1) whether the Texas ruling constitutes a "final judgment" for collateral estoppel purposes; and (2) whether the Texas court actually and necessarily decided the compulsory counterclaim issue.

*A. Final Judgment*

■ Gilldorn argues that the Texas order is not a "final judgment" for collateral estoppel purposes. Gilldorn contends that the Texas order is not "firm and stable enough" because no oral argument preceded the court's ruling, the Texas court did not support its decision with an opinion, and the denial of the dismissal motion was not appealable. Commerce contends that the interlocutory nature of the order does not prevent it from precluding relitigation of issues actually decided. Commerce asserts that the only relevant question is whether the issue was actually resolved in the prior action. Both parties agree that finality for collateral estoppel is not the same as that required to appeal under 28 U.S.C. § 1291 (1982), and both cite *Miller Brewing Co. v. Joseph Schlitz Brewing Co.,* 605 F.2d 990 (7th Cir.1979), *cert. denied,* 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980), as support for their arguments.

In *Miller,* this court gave preclusive effect to its own decision on an issue raised in the appeal from a preliminary injunction order in a prior case involving Miller and a third brewery. The *Miller* court discussed several factors to be considered to determine whether a decision is "final" for collateral estoppel purposes: that the decision

was not "avowedly tentative," that the hearing was adequate and the parties were fully heard, that the court supported its decision with a reasoned opinion, and that the decision was appealable or had been appealed. 605 F.2d at 996. The ultimate question is whether the "'prior adjudication ... is determined to be sufficiently firm to be accorded conclusive effect.'" *Id.* (quoting Restatement (Second) of Judgments § 41 comment g (Tent. Draft No. 1 1973)). *Accord In re Cenco Inc. Securities Litigation,* 529 F.Supp. 411, 416 n. 5 (N.D.Ill.1982) ("The relevant question is whether the issue has been resolved in the prior action so that the Court has no good reason to permit it to be litigated again."); *American Postal Workers Union v. United States Postal Service,* 736 F.2d 317, 319 (6th Cir.1984) (final judgment in the case as a whole is not necessary; motion to dismiss decision can be given preclusive effect as long as issue finally decided).

The Texas court's decision here is sufficiently firm to preclude further litigation of the compulsory counterclaim issue. Nothing in the order itself or in the record indicates that the order was tentative. Although the motion was not orally argued, the issue was fully briefed. In support of its motion, Gilldorn filed three briefs totalling approximately thirty pages, one-third of which addressed the compulsory counterclaim issue. Commerce filed two briefs totalling approximately twenty-one pages, half of which addressed the counterclaim issue. The Texas court's order indicates that the court "considered the arguments and authorities submitted on behalf of the parties." The parties thus had sufficient opportunity to be heard on the issue, and the judge was amply advised of the arguments on both sides of the issue to allow him to make a reasoned decision. *See Jones,* 757 F.2d at 885.

Gilldorn also had ample incentive to vigorously assert the compulsory counterclaim argument as success would have meant dismissal of Commerce's action in Texas. *See Kunzelman,* at 1177 ("Critical to the application of collateral estoppel is the

guarantee that the party sought to be estopped had the opportunity and the incentive to litigate the issue aggressively."); *Ferrell*, 785 F.2d at 1385 (exception to collateral estoppel where issue not recognized by parties as significant); *Bowen*, 570 F.2d at 1322–23 (if significance that administrative decision would have in later court proceedings is not reasonably foreseeable, and party therefore chooses not to litigate the issue in the administrative proceeding, then it would be unfair to bind the party by the administrative proceeding). Although the Texas order was interlocutory and therefore not subject to appeal, "the need for a final judgment [in the case as a whole] is not as compelling when the question is whether the determination of a single issue actually decided in the first action should be given conclusive effect in a later action between the parties on a different claim." *In re Electric Weld Steel Tubing Antitrust Litigation*, 512 F.Supp. 81, 83 (N.D. Ill.1981) (denial of motion to disclose grand jury documents in criminal case given preclusive effect in later civil antitrust litigation).

## B. Issue Actually and Necessarily Decided

■ "Under the doctrine of collateral estoppel, once an issue has been 'actually and necessarily determined, that determination is conclusive in subsequent suits based on a different cause of action' between the parties." *EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.*, 746 F.2d 375, 377 (7th Cir.1984) (quoting *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)). Gilldorn argues that the Texas order is "uncertain as to what issues it adjudicated" and that without an opinion explaining the Texas order it is impossible to determine

whether the Texas court even considered the compulsory counterclaim issue. Gilldorn contends that the Texas court could have based its order on any one of the four grounds in Gilldorn's dismissal motion.

In its motion to dismiss, Gilldorn claimed that all of Commerce's claims in the Texas action were compulsory counterclaims under Fed.R.Civ.P. 13(a) to the Illinois action and that, for various reasons, each of Commerce's three counts failed to state a claim under Fed.R.Civ.P. 12(b)(6).[3] Any one of these grounds alone would have been sufficient to require dismissal of the suit. Therefore, by denying the motion to dismiss, the Texas court implicitly rejected each of these four grounds. *See* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4421, at 203 (1981) ("If all of the findings are necessary to support the judgment in the sense that it could not be reached absent any one of them, issue preclusion extends to all.").

Gilldorn also argues that Commerce cannot establish by a preponderance that the counterclaim issue was actually and necessarily decided because the Texas court did not explain its order in an opinion or memorandum. Although the party asserting estoppel has the burden of showing that the claim was actually litigated and decided, "[p]roof is not limited to the formal record of the prior action, and may involve elaborate processes of inference in order to determine whether a particular issue has been decided." 18 C. Wright, *supra*, § 4405, at 38. Although the Texas court did not make findings of fact in support of its decision nor explicitly consider each of the bases for the motion, the court implicitly rejected all four grounds in denying the motion. Had any one of the grounds been sufficient, a contrary result would have been unavoidable.[4] Thus, by denying the

3. Gilldorn's motion asserted that: (1) count I failed to state a claim because it did not state facts indicating compliance with the applicable statute of limitations; (2) counts I and II failed to state claims because they did not allege the status of the defendants; and (3) count III failed to state a claim because Commerce sought improper relief for the alleged violation.

4. Gilldorn argues that it is possible that the Texas court followed the reasoning of *Leonard F. Fellman Co. v. Smith-Corona Marchant Inc.*, 27 F.R.D. 263 (E.D.Pa.1961). In *Fellman*, the defendant in the subsequent action moved in the alternative to dismiss or to stay the proceedings as the plaintiff had asserted the same claims as counterclaims under Fed.R.Civ.P.

dismissal motion the Texas court necessarily decided all four issues in Commerce's favor.

Decision on each issue was necessary to the Texas order as each issue had to be resolved in order to reach the result. *See* C. Wright, *supra,* § 4420, at 186.

> In discovering what issues were determined by the judgment in a prior action, the court in the second action is free to go beyond the judgment roll, and may examine the pleadings and the evidence in the prior action. And if the rendering court made no express findings on issues raised by the pleadings or the evidence, the court may infer that in the prior action a determination appropriate to the judgment rendered was made as to each issue that was so raised and the determination of which was necessary to support the judgment.

1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.443[4], at 3913 (1984) (footnotes omitted).

Quoting *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1518–19 (9th Cir.1985), Gilldorn argues that since the Texas decision "could have been rationally grounded upon an issue other than that which [Commerce] seeks to foreclose from consideration, collateral estoppel does not preclude relitigation of the asserted issue." This argument might have been persuasive if the Texas court had *granted* the dismissal motion without explanation, as each ground would have been sufficient to sustain the dismissal independently of the other grounds, and it would have been impossible to tell which issues were actually decided and were necessary to the decision. 1B J. Moore, *supra,* ¶ 0.443[4], at 3915. *See* 18 C. Wright, *supra,* § 4421, at 204–05 (comparing the approach of the first Restatement of Judgments, which extends preclusion to each independent finding, with the approach of the second Restatement, which denies preclusion to any independent alternative bases). Because the Texas judge denied Gilldorn's motion, however, and refused to dismiss Commerce's suit, he necessarily considered each ground and found all four meritless.

As each issue was actually and necessarily litigated and decided, collateral estoppel applies and prevents relitigation of all four issues, including the compulsory counterclaim issue. *Cf. Insurance Co. of North America v. Norton,* 716 F.2d 1112, 1115 (7th Cir.1983) (finding as to alignment of party was unnecessary to court's denial of removal of a state case and therefore party not collaterally estopped from relitigating issue). The Illinois district court therefore erred in refusing to give collateral estoppel effect to the Texas decision.

### III.

Our decision that the Illinois district court should have applied collateral estoppel is buttressed by the "practical realities" of this case. *County of Cook,* 773 F.2d at 904. First, Gilldorn decided to pursue the compulsory counterclaim issue in the Texas district court instead of immediately requesting an injunction in the Illinois action. Having made that decision, Gilldorn must

13(a) in the defendant's prior action. The *Fellman* court refused to dismiss but granted a stay of the proceedings pending the outcome of the prior action. The court stated: "[W]e are unaware of any authority, nor have we been shown any, in support of the proposition that the proper remedy for the situation is a dismissal of the complaint." *Id.* at 264.

Gilldorn argues that since it sought only dismissal of Commerce's complaint for an alleged violation of Rule 13(a), and did not ask in the alternative for a stay, the Texas court "may have overruled the motion on that ground and not because Commerce had not violated Rule 13(a)." In a footnote in its response to Gilldorn's dismissal motion in the Texas action,

Commerce cited *Fellman* and argued that dismissal would be an inappropriate remedy in the event that the court found that its claims were compulsory counterclaims. The Texas court therefore was aware of the *Fellman* case. However, if the Texas court had found that Commerce's claims were indeed compulsory counterclaims, and if the court had been persuaded by the *Fellman* court's reasoning, the Texas court would have denied the motion to dismiss and also would have entered an order expressly granting a stay of the Texas action. The court would not have merely denied the motion to dismiss without explanation and allowed the parties to proceed with an improper suit.

now abide by the Texas court's ruling. *See EZ Loader*, 746 F.2d at 377 (fact that appellant "chose the forum in which to proceed weighs in favor of collateral application of that forum's findings").

Second, our decision will not create an inequitable result as the Texas action is not a compulsory counterclaim under Fed.R. Civ.P. 13(a).[5] *See County of Cook*, 773 F.2d at 904 ("we find no inequity in the conclusion that collateral estoppel operates to bar relitigation of issues that were decided in the state suit and are controlling in this one"); *Jones v. City of Alton*, 757 F.2d 878, 885 (7th Cir.1985) (collateral estoppel is equitable doctrine in the sense that party must have had a full and fair opportunity to litigate the issue, and it must not be an injustice to apply it). *Cf. Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981) ("we do not see the grave injustice which would be done by the application of accepted principles of res judicata").

In applying rule 13(a),[6] this court has adopted a "logical relationship" test, but has not

> abandoned the limitation of compulsory counterclaims to disputes arising out of the *same transaction or occurrence*.
>
> Courts generally have agreed that the words "transaction or occurrence" should be interpreted liberally in order to further the general policies of the federal rules and carry out the philosophy of Rule 13(a).... The purpose of the rule is to prevent multiplicity of actions and to achieve resolution in a single lawsuit

of all disputes arising out of common matters.... As a word of flexible meaning, "transaction" may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.... [A] counterclaim that has its roots in a separate transaction or occurrence is permissive and is governed by Rule 13(b).

*Warshawsky & Co. v. Arcata National Corp.*, 552 F.2d 1257, 1261 (7th Cir.1977).

Commerce's claims in the Texas action do not arise out of the same transaction as Gilldorn's claims in the Illinois action. Commerce's claims arise out of the exchange of preferred stock for subordinated debentures which occurred approximately one year after the execution of the Stock Purchase Agreement. The exchange of stock for debentures was totally unrelated to the Stock Purchase Agreement originally entered into. Commerce claims in its action that Gilldorn misrepresented that it would settle amicably, without litigation, any claims arising under the Stock Purchase Agreement. Gilldorn allegedly made these misrepresentations to induce Commerce to agree to the exchange to alleviate Gilldorn's financial difficulties from the unrelated acquisition of several savings and loan branches. Gilldorn's claims, however, arise solely out of the sale of the Percy Wilson Mortgage Company. Gilldorn alleges in the Illinois action that Commerce stripped the company of valuable assets before the sale and that Com-

---

**5.** Gilldorn suggests in a footnote that instead of bringing a separate action, Commerce should have presented these issues as a counterclaim to the Illinois action and then requested a separate trial under rule 42. This solution, however, would have effectively denied Commerce its choice of forum for its claims, but would not have furthered rule 13(a)'s concern with economy and efficiency in trying all the parties' claims in one action. *See* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1409, at 38, and § 1410, at 47 (1971); *Warshawsky*, 552 F.2d at 1263 (compulsory counterclaim could have been tried in either Illinois or California—not necessarily in court which first acquired jurisdiction).

**6.** Rule 13(a) in relevant part provides:

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Rule 13(b) provides:

(b) Permissive Counterclaims. A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

merce misrepresented the company's liabilities.

Commerce's claims technically are related to Gilldorn's in the sense that Commerce's claims may not have accrued until Gilldorn filed the Illinois action. But this type of relationship is not sufficient under rule 13(a). *See Valencia v. Anderson Bros. Ford,* 617 F.2d 1278, 1291 (7th Cir. 1980) (connection between a Truth-In-Lending Act claim and a debt counterclaim is "so insignificant that compulsory adjudication of both claims in a single lawsuit will secure few, if any, of the advantages envisioned in Rule 13(a)"), *rev'd on other grounds,* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981). The claims do not spring from a continuous course of dealings between the parties as in *Warshawsky.* In *Warshawsky,* 552 F.2d at 1262, the court determined that a printer's claim for amounts due and owing for printing and distributing done after the contract expired arose from the same transaction as the seller's claim that the printer breached the agreement to print and distribute catalogs. The court found the requisite logical relationship because the printer's printing after the contract expired was done "in a manner virtually identical to the parties' previous 'course of dealing'" throughout the duration of the parties' five-year written agreement. *Id.* A similar type of single, continuous "course of dealing" does not exist in this case.

Gilldorn's action involves the alleged misrepresentation of Percy Wilson Mortgage Company's losses, liabilities, and lawsuits in the 1983 sale agreement. Gilldorn alleges common law fraud, breach of the Securities Exchange Act of 1934, and breach of warranty. Gilldorn seeks compensatory and punitive damages. On the other hand, Commerce's action arises under the Securities Act of 1933 and the Texas Securities Act. Commerce alleges misrepresentation warranting rescission of the 1984 exchange of preferred stock for debentures. The Illinois and the Texas action "raise different legal and factual issues governed by different bodies of law." *Valencia,* 617 F.2d at 1291. The parties' obligations at issue in each action arise from separate and distinct contractual arrangements and verbal assurances.

"In these circumstances, wooden application of the common transaction label does not yield real judicial economy; any perceived logical nexus is conceptual, abstract, a formal characterization rather than a recognition of concrete advantage to be achieved through single forum adjudication of all the parties' opposing claims."

*Id.* (quoting *Ball v. Connecticut Bank & Trust Co.,* 404 F.Supp. 1, 4 (D.Conn.1975) (citations omitted)).

Furthermore, the transaction at issue in the Illinois action is significantly more complex and thus will involve more documentary and testimonial evidence than the exchange at issue in the Texas action. Our decision to accord collateral estoppel effect to the Texas decision will not disserve the policies underlying rule 13(a) to compel parties to "settle all related claims in one action, thereby avoiding a wasteful multiplicity of litigation on claims arising from a single transaction or occurrence." 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1409, at 37 (1971). Compelling a single trial here would have unduly and unnecessarily complicated the litigation. Judicial economy would not be well served in this case as these two actions are based on separate transactions and "'lack any shared realm of genuine dispute.'" *Valencia,* 617 F.2d at 1291 (quoting *Ball,* 404 F.Supp. at 4). *See By-Prod Corp. v. Armen-Berry Co.,* 668 F.2d 956, 960 (7th Cir.1982) (judicial economy not served by requiring litigation of state-law count as a counterclaim in an antitrust suit).

For the foregoing reasons, the district court's decision is

REVERSED.