**LEHMAN'S INC. OF ANDERSON,
Plaintiff–Appellant,**

**v.**

**James E. HITTLE and Patricia Ann
Hittle, Defendants–Appellees.**

**In re James E. HITTLE and Patricia
Ann Hittle, Debtors.**

**No. IP 93–1110–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Jan. 25, 1994.

Samuel C. Haslar, Haslar & Maynard, Anderson, IN, for plaintiff-appellant.

James H. Hanson, Scopelitis Garvin Light & Hanson, Indianapolis, IN, for debtors/defendants-appellees.

BARKER, Chief Judge.

Lehman's, Inc. of Anderson appeals the Bankruptcy Court's denial of its adverse dischargeability determination. The appeal has been fully briefed, and based on a review of the parties' filings, the record, and the relevant case law, it is ORDERED that the judgment of the Bankruptcy Court is REVERSED.

## I. Background

On September 7, 1989, Lehman's, Inc. of Anderson ("Lehman's") filed a civil action against James and Patricia Hittle in the Superior Court of Madison County, Indiana. The complaint alleged that the Hittles had, in or about November, 1987, entered Lehman's' property, removed a furnace, and had that furnace installed in their home. The complaint further alleged that Lehman's had made repeated demands on the Hittles for the return of the furnace, but the Hittles had repeatedly ignored the demands. The complaint requested trebled damages and attor-

ney's fees pursuant to Ind.Code § 34–4–30–1 for the Hittles' alleged conversion of the furnace.

On June 17, 1992, the Madison County Superior Court granted Lehman's' motion for summary judgment, finding that "the material allegations of Plaintiff's complaint are true and correct." The Court ordered the Hittles to pay trebled damages in the amount of $4,092.00, prejudgment interest in the amount of $872.96, attorney's fees, and costs of the Court. There is nothing in the testimony or record to indicate that the Hittles in any way appealed this judgment.

On August 28, 1992 the Hittles filed their voluntary petition under Chapter 7 of the U.S. Bankruptcy Code. The Hittles listed Lehman's on their bankruptcy schedule F as an unsecured creditor holding a fixed and liquidated claim in the amount of $4,694.06 and Lehman's' counsel, James H. Hanson, as an unsecured creditor holding a fixed and liquidated claim in the amount of $264.08.[1]

On October 27, 1992 the Bankruptcy Court lifted the automatic stay entered pursuant to 11 U.S.C. § 362 in order to allow the Madison Superior Court to hold its hearing to determine the total amount of attorney's fees owed by the Hittles as a result of the judgment. On December 16, 1992 the Hittles and Lehman's agreed to an award of attorney's fees in the amount of $10,813.00. On February 3, 1993, the Madison Superior Court entered an order approving the parties' agreement on attorney's fees.

On March 3, 1993, Lehman's filed its complaint against the Hittles in Bankruptcy Court in order to determine the dischargeability of the Hittles' debts arising from the Madison Superior Court action. On April 6, 1993 the Hittles answered the complaint, admitting the "total amount due and owing to [Lehman's], pursuant to the [Madison Superior Court] judgment, of $15,777.96," but denying that the debt is nondischargeable.

On August 12, 1993, the Bankruptcy Court held a hearing on Lehman's' complaint to determine the dischargeability of the Hittles'

---

1. After a thorough review of the documents included with this appeal, we are unable to explain the differences between the dollar amounts in the state court judgment and the dollar amounts listed in the Hittles' bankruptcy schedule F.

debt. Lehman's' counsel offered the complaint and judgment from the Madison Superior Court action and argued that the debts incurred as a result of the state court judgment are the result of the Hittles' willful and malicious injury to Lehman's' property and are, therefore, nondischargeable under 11 U.S.C. § 523(a)(6). The Hittles' counsel argued that the state court judgment did not have a collateral estoppel effect because the judgment did not necessarily reach the issue of whether the Hittles had acted maliciously. At the request of the Bankruptcy Court, both of the Hittles gave testimony about the circumstances surrounding the conversion of the furnace.

At the conclusion of the hearing, the Bankruptcy Court ruled that the state court judgment would not be given collateral estoppel effect because: 1) the state court judgment, by simply "adopting the allegations of the complaint" does not constitute "an independent finding of facts and conclusions of law;" 2) the state court judgment was made on motion for summary judgment, and there was not, therefore, any opportunity for the Hittles to give live testimony; and 3) the Hittles' actions were not "malicious" as is required under 11 U.S.C. § 523(a)(6). Finding that the Hittles had committed "no fraud, no wrongdoing," the Bankruptcy Court held that the full amount of the debt from the state court judgment is dischargeable.

Lehman's appeals the ruling of the Bankruptcy Court on two grounds:

1. The Bankruptcy Court, as a matter of law, erred in not affording collateral estoppel effect to the state court judgment of wrongful and intentional conversion against the Hittles for purposes of a nondischargeability determination under 11 U.S.C. § 523(a)(6).

2. The facts found by the Bankruptcy Court do not support its conclusion that the Hittles did not willfully and maliciously injure Lehman's property through their act of wrongful conversion, as required by 11 U.S.C. § 523(a)(6).

## II. Standard of Review

■ The standard which this Court must apply when reviewing decisions of the Bankruptcy Court is set forth in Rule 8013 of the Federal Rules of Bankruptcy Procedure:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.

Therefore, this Court is required to accept the Bankruptcy Court's findings of fact unless they are clearly erroneous. *In re Excalibur Auto. Corp.*, 859 F.2d 454, 457 n. 3 (7th Cir.1988). However, the Bankruptcy Court's conclusions of law are reviewed de novo. *Id.*

## III. Collateral Estoppel

■ "Collateral estoppel bars the resuscitation of questions that have been previously litigated." *Fidelity Fin. Services v. Cornell–Cooley*, 158 B.R. 128, 132 (S.D.Ind.1993).

To be precise, collateral estoppel requires that (1) the issue sought to be precluded is the same as that involved in a prior action, (2) the issue was actually litigated, (3) determination of the issue was essential to the final judgment, and (4) the party to be estopped was fully represented in the prior action.

*Id.* (quoting *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir.1992)). Federal courts should apply collateral estoppel to discharge determinations where the state litigation actually and necessarily decided the relevant issue. *Grogan v. Garner*, 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991) ("clarify[ing] that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to 523(a)").

*(1) The issue sought to be precluded is the same as that involved in a prior action.*

To show that a debt is nondischargeable under § 523(a)(6), a creditor must prove that the debt is a result of the "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

■ The state court found that the Hittles were liable to Lehman's under Ind.Code § 34–4–30–1, Indiana's statute for civil recovery for crime victims. In order to prevail in a civil action for conversion brought pursuant to Ind.Code § 34–4–30–1, a plaintiff must prove the elements found in the criminal conversion statute. *DBC Capital Fund, Inc. v. Snodgrass,* 551 N.E.2d 475, 478 (Ind.App. 1990). The Indiana criminal conversion statute is codified at Ind.Code § 35–43–4–3, and reads: "A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion." In order for a trial court to have awarded treble damages, attorney's fees, and costs in an action for conversion under Ind.Code § 34–4–30–1, the court must have found by a preponderance of the evidence that the defendant "knowingly and intentionally exerted unauthorized control over the [property of the plaintiff]." *DBC Capital Fund,* 551 N.E.2d at 478 (citing *Obremski v. Henderson,* 497 N.E.2d 909, 911 (Ind.1986)).[2]

The question to be answered is whether liability for knowingly and intentionally exerting unauthorized control over a person's property is the equivalent of willful and malicious injury to another's property, so as to make Indiana's criminal conversion equivalent to an activity requiring that a debt be nondischargeable under 11 U.S.C. § 523(a)(6).

"Willful" for the purposes of 11 U.S.C. § 523(a)(6) is generally understood to mean a deliberate or intentional act. *In re Long,* 774 F.2d 875, 880 (8th Cir.1985); *In re Compos,* 768 F.2d 1155, 1158 (10th Cir.1985); *In re Lampi,* 152 B.R. 543, 545 (C.D.Ill.1993). The fact that criminal conversion requires a mens rea of knowing or intentional means that the "willful" prong of 11 U.S.C. § 523(a)(6) is satisfied.

"Malicious" for the purposes of 11 U.S.C. § 523(a)(6) is more difficult to define, and is currently a matter of some confusion in the Seventh Circuit:

> The meaning of "malicious" is a subject of considerable conflict among lower courts as well as courts of appeals. Some courts have interpreted malicious to require an "intent to do harm," while others have applied an implied or constructive malice standard derived from *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). *See generally United Bank of Southgate v. Nelson,* 35 B.R. 766, 770 (N.D.Ill.1983) (discussing split in authorities). This circuit has not taken a definitive stand on the question, and it is unnecessary for us to reach that issue of first impression here.

*In re Scarlata,* 979 F.2d 521, 526 (7th Cir. 1992), *reh'g denied* (1993).

While the Seventh Circuit did not reach the issue in *Scarlata,* other definitions were discussed. Lower courts had applied the "specific malice" standard, defining a malicious act as one which would "automatically or necessarily" cause injury to the creditor. *Id.* The creditor in *Scarlata* urged the Seventh Circuit to adopt the "implied malice" standard which defines a malicious act as "a deliberate and intentional act in which the debtor [proceeds] know[ing] his act [will] harm the creditor's interest. . . ." *Id.* at 527 (quoting *United Bank of Southgate v. Nelson,* 35 B.R. 766, 776 (N.D.Ill.1983)).

The Seventh Circuit reasoned that both definitions required proof that "the debtor took the sort of actions that would 'automatically or necessarily' harm the creditor." *Id.* The Seventh Circuit concluded that the creditor had not explained why the lower courts had erred in using the "necessarily caused harm" standard, and upheld the application of that standard in the case. *Id.* at 528.

---

2. The Hittles' counsel's contention that "there is no mens rea requirement in the state law on conversion" is, to say the least, misleading. Since Lehman's recovered against the Hittles for conversion under Ind.Code § 34–4–30–1, Lehman's was required to prove the elements of *criminal* conversion (including the requisite mens rea). To the extent Hittles' counsel made reference to the mens rea (or lack thereof) for *tortious* conversion, he simply was arguing the mens rea for a different cause of action. *Coffel v. Perry,* 452 N.E.2d 1066, 1069 (Ind.App.1983) ("'[c]riminal conversion requires the unauthorized control to be either intentional or knowing," but "mens rea is not an element of tortious conversion").

It is not necessary for this Court to determine the correct definition of malicious in this instance because the state court judgment would satisfy the "necessarily caused harm" standard. Where a person knowingly or intentionally exerts unauthorized control over another person's property, this action most certainly demonstrates a knowledge of necessary harm. Any element of mistake or excuse would prevent the control from being knowingly or intentionally unauthorized. That the control was knowingly or intentionally unauthorized leaves no question that it was malicious within the meaning of § 523(a)(6).

The first element of collateral estoppel is therefore present in this case.

### (2) The issue was actually litigated.

The Hittles have claimed that the fact that the state court judgment was made on Lehman's' motion for summary judgment means that the issue was not "actually litigated." As support for this argument, the Hittles cite a case involving the lack of preclusive effect of a determination made at a probable cause hearing (where the defendant was not allowed to present evidence or cross-examine the state's witnesses). Appellees' Brief at 8 (citing *Bailey v. Andrews*, 811 F.2d 366, 370 (7th Cir.1987)).

 The requirement that an issue be "actually litigated" does not necessitate a full-blown trial or opinion on the matter. *See Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 394–95 (7th Cir.1987) (finding issue had been actually and necessarily decided for collateral estoppel purposes where, on motion to dismiss, state court had made no findings of fact and had not explained its order in an opinion or memorandum). A prior determination on a motion for summary judgment constitutes actual litigation. *In re Wien*, 155 B.R. 479, 487 (Bankr.N.D.Ill.1993); *see also Spiegel v. Continental Illinois Nat'l Bank*, 790 F.2d 638, 645 (7th Cir.1986) (finding a judgment on motion to dismiss for failure to state a claim was a final judgment on the merits for res judicata purposes), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582.

The second element of collateral estoppel is therefore satisfied in this case.

### (3) Determination of the issue was essential to the final judgment.

Because the state court's judgment on the Hittles' conversion necessarily determined that the Hittles "willfully and maliciously" took control of the property (see discussion infra), the third element of collateral estoppel is also present in this case.

### (4) The party to be estopped was fully represented in the prior action.

There has been no contention by the Hittles that they were not fully represented in the prior action. When questioned by the Bankruptcy Court, the Hittles' counsel responded that the Hittles were represented by counsel in the state court action. In fact, the Hittles' counsel in the instant action is the same attorney who signed the agreed entry on the Hittles' behalf for $10,813.00 in attorney's fees in the state court action. Therefore, the fourth element of collateral estoppel is present in this case.

### IV. Conclusion

The Bankruptcy Court should have given the state court judgment collateral estoppel effect as to the nondischargeability of the debt in the instant case.[3] Having so deter-

---

3. While this Court is sympathetic to the Bankruptcy Court's astonishment that a case for conversion of a furnace worth less than $2,000.00 could result in a judgment of over $15,000.00, the law of collateral estoppel precludes a re-examination of the substantive determinations in the state court action. See *University of Illinois Foundation v. Blonder Tongue Lab., Inc.*, 465 F.2d 380, 381 (7th Cir.1972) ("[r]eview by the court which considers the plea of collateral estoppel of the reasoning of the court which made the prior adjudication would be inconsistent with the doctrine of collateral estoppel"), *cert. denied*, 409 U.S. 1061, 93 S.Ct. 559, 34 L.Ed.2d 513; The policy underlying the doctrine of collateral estoppel is that "one fair opportunity to litigate an issue is enough." *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 392 (7th Cir. 1986) (citing *Bowen v. United States*, 570 F.2d 1311, 1322 (7th Cir.1978)). The Hittles had their opportunity to litigate the conversion action. They could have appealed the state court judgment if they had so chosen. They did not do so and they can not now re-litigate the issue or hide

mined, this Court need not address Lehman's' second issue presented for review.

For the above stated reasons, the Court REVERSES the Bankruptcy Court's determination of dischargeability of the Hittles' debts incurred as a result of the state court judgment, and ORDERS that the $15,777.96 in debt resulting from the state court judgment be declared and treated in all respects as nondischargeable.

It is so ORDERED.

behind a declaration of bankruptcy to avoid the judgment. *See Alpern v. Lieb,* 11 F.3d 689, 690 (7th Cir.1993) (disallowing the debtor "to delay the imposition of [Rule 11] sanctions indefinitely by the expedient of declaring bankruptcy," reasoning that to allow the debtor to do so would create improper incentives for unprofessional conduct by those "teetering on the edge of the bankruptcy abyss").