**Sylvia ASLLANI, Plaintiff,**

v.

**BOARD OF EDUCATION OF the CITY OF CHICAGO, et al., Defendants.**

**No. 92 C 4295.**

United States District Court, N.D. Illinois, E.D.

March 29, 1993.

Memorandum Denying Reconsideration Oct. 26, 1993.

Memorandum Denying Second Motion for Reconsideration Jan. 11, 1994.

---

Sylvia Asllani, pro se.

Vickie A. Gillio, Timothy Merle McGinness, Cahill, Einspar–Wayne & Gillio, Chicago, IL, Susan Ellyn Einspar–Wayne, Law Office of Deborah W. Owens, Chicago, IL, for plaintiff.

Iris Ellen Sholder, Miguel Angel Rodriguez, Michael Joseph Hernandez, Margaret C. Fitzpatrick, Bd. of Educ. of City of Chicago, Law Dept., Chicago, IL, for Bd. of Educ. of City of Chicago and Ted R. Kimbrough.

Kelly Raymond Welsh, Sharon Baldwin, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, for Lourdes Monteagudo and City of Chicago.

Susan Valentine, Fay Clayton, Robinson, Curley & Clayton, P.C., Chicago, IL, for United Neighborhood Organization and Daniel Solis.

Richard E. Girard, Mark Adrian Moreno, Raul A. Villalobos, Eileen Teresa Pahl, Rodriquez & Villalobos, Chicago, IL, for Pilsen Neighbors Community Council, Teresa Fraga and Mary Gonzalez.

Joyce Combest Price, Iris Ellen Sholder, Miguel Angel Rodriguez, Michael Joseph Hernandez, City of Chicago Bd. of Educ., Chicago, IL, for Delores Engelskirchen, Adella Greeley, William Singer, Raymond C. Principe, Tomas Revollo, Dr. Robert Saddler, Patricia Churchill, Ruth Garcia, Brunilda Gaytan, Carmen Gonzales, Lois Lopez, Lourdes Maldonaldo, Connie Morgan, Gloria Cortes, Ramon Prado and Guadelupe Reyes.

Robert Leonard Shuftan, Georgia L. Vlamis, Thomas John Verticchio, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Victor Gonzalez.

### MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Sylvia Asllani (Asllani) brings this multi-count action against the Board of Education of the City of Chicago (the Board), the City of Chicago (the City), Ted Kimbrough (Kimbrough), Lourdes Monteagudo (Monteagudo), the United Neighborhood Organization (UNO), the Pilsen Neighbors Community Council (Pilsen Neighbors), the Pickard Local School Council (the Council), and twenty one of the Board's and Council's present or former members. Asllani brings various federal claims alleging civil rights violations and state law claims. She alleges that as principal of the Pickard Elementary School (Pickard School) she was discriminated against because of her race and political affiliation. Before this court are various motions brought by defendants, including motions for dismissal or in the alternative to stay proceedings, and a motion for summary judgment.[1] For the reasons set forth below,

---

1. Twenty-four of the twenty-eight defendants have filed motions before this court. For purposes of making their motions, the parties are grouped as follows:

defendants' motions are granted in part and denied in part.

## FACTS

Asllani, a white female, had been employed by the Board since 1958. She served as a teacher until 1977, at which time she became the interim principal of Darwin School. In March 1977, she was assigned as a regularly-appointed principal to Pickard School under the "Plan for Implementation of Title VI of the Civil Rights Act of 1964" (the 1977 Plan) and the "Protective Principles" which were incorporated as chapter VI of the 1977 Plan. According to plaintiff, her performance as a teacher and principal consistently had been rated as excellent or superior.

On April 9, 1990, Kimbrough, general superintendent of the Chicago Public Schools, notified Asllani that he planned to request her suspension for a period not to exceed thirty days. A pre-suspension hearing was held on April 11 and April 13, 1990. On April 18, 1990, the Board met and upon the recommendation of the hearing officer voted to suspend plaintiff without pay for twenty-five school days, beginning April 20, 1990. Defendant Cortes acted as the substitute principal while Asllani served the suspension. The facts surrounding plaintiff's suspension were recited and addressed in detail in an earlier opinion written by Judge Zagel and therefore need not be further discussed here.[2]

Asllani's contract for employment as principal was for four years, ending June 30, 1990. The Council held a meeting on April 14, 1990, and voted to renew Asllani's contract for a four-year term beginning July 1, 1990. That same month, Kimbrough declared that the April 14, 1990 meeting was void. On April 25, 1990, the Council conducted a meeting where the defendant members of the Council voted not to renew Asllani's contract. The six members of the Council who voted not to extend the contract to Asllani were Hispanic. Asllani was not present at the meeting and was not informed until May 17, 1990, that the Council had voted not to renew her contract.

On May 7, 1990, plaintiff was notified that she was to be suspended for a second time, pending a hearing. A pre-suspension hearing took place on May 21, 1990, and the hearing officer, defendant Principe, recommended suspension of Asllani to the Board. Plaintiff was suspended for allegedly conducting and participating in illegal meetings, for allegedly harassing a teacher at Pickard School, and for failing to obtain a building permit.

On June 26, 1990, a Council meeting was held and the members voted to extend a four-year contract to Cortes, a Hispanic, for the position of principal at Pickard School, effective July 1, 1990. Asllani was not notified of the June 26, 1990 meeting.

When Asllani returned from her suspension on July 6, 1990, she was denied access to her office and was informed by defendant Engelskirchen that she was no longer the principal at Pickard School.

On April 12, 1990, plaintiff filed her initial complaint and on May 22, 1990, she filed her amended complaint before Judge Zagel seeking declaratory and other relief against the Board, Principe, Kimbrough, and Engelskirchen. In that action plaintiff alleged that the defendants violated the provisions of 42 U.S.C. 1983 and the Fourteenth Amendment, when they suspended her in April 1990. Plaintiff further alleged that the defendants were engaged in a political conspiracy with one of the Council's factions and that they sought to suspend plaintiff, in retaliation, because she was a member of the opposing council faction. Asllani further claimed that defendants' actions were in violation of her

---

(1) the board, Kimbrough, Engelskirchen, Greeley, Singer, Principe, Revollo, Saddler, Churchill, Garcia, Gaytan, Gonzales, Lopez, Morgan, Reyes, and Cortes;
(2) UNO and Solis;
(3) Victor Gonzalez;
(4) Pilsen, Fraga and Mary Gonzalez;
(5) the City and Monteagudo.

For the most part, the issues raised in the five briefs are the same and, therefore, we will address the parties' arguments at one time. However, any unique issues or circumstances raised in a motion are addressed separately.

**2.** See *Asllani v. Board of Education for the City of Chicago, et al.*, 1990 WL 165644, 1990 U.S. Dist. LEXIS 13946 (N.D.Ill. October 16, 1990).

First Amendment rights and amounted to a political conspiracy to deprive plaintiff of her civil rights based upon her race. On October 16, 1990, Judge Zagel granted defendants' motion to dismiss those claims.

On May 16, 1990, plaintiff filed her first complaint and on January 17, 1992 she filed her fourth amended complaint with the Circuit Court of Cook County before Judge O'Brien.[3] That complaint includes many of the allegations encompassed in Asllani's complaint now before us.[4] Judge O'Brien has dismissed with prejudice four of the seven counts of plaintiff's fourth amended complaint.

On July 1, 1992, Asllani filed her complaint before this court. The complaint includes eleven counts against twenty-eight defendants.[5]

3. *Asllani v. Board of Education of the City of Chicago, et al.,* No. 90 CH 4804.

4. The defendants named in plaintiff's complaint filed in the Circuit Court of Cook County include: the Board, Principe, Kimbrough, Engelskirchen, Cortes and the Council.

5. The complaint is summarized as follows:
 Count I: alleges that the Board and certain of its members discriminated against plaintiff because of her race when they voted on April 25, 1990, not to renew Asllani's employment contract, thereby violating Title VII.
 Count II: alleges that when the Board terminated plaintiff it violated: (i) Title VI; (ii) the due process provisions of the Fourteenth Amendment; (iii) the due process provisions of the Illinois Constitution; and (iv) the 1977 Plan.
 Count III: alleges that the Board through its agents, Kimbrough, Engelskirchen, Gaytan, Zapata, Prado, Morgan, Reyes and Garcia, wrongfully terminated plaintiff in violation of 42 U.S.C. § 1981.
 Count IV: alleges that the defendants participated in a conspiracy in violation of 42 U.S.C. § 1983 to deprive plaintiff of her civil rights by acting in concert to interfere with her right to renew her contract as principal, interfering with her existing contract with the Board, and by attaining the goals of the conspiracy—her wrongful suspension, the actual breach of her employment contract, and her termination as principal.
 Count V: alleges that the City, Monteagudo, Board, Kimbrough, Sadler, Engelskirchen, Revollo, Principe, Churchill, Greeley, Singer, the Council, Gaytan, Garcia, Carmen Gonzales, Lopez, Maldonado, Morgan, Prado, Reyes, Zapata, and Cortes violated 42 U.S.C. § 1983 by denying plaintiff her equal protection of the

## DISCUSSION

### I. *Prior and Ongoing Litigation*

▇▇▇ Defendants argue that this court should dismiss plaintiff's amended complaint in its entirety because its claims are barred by the doctrine of *res judicata.* The doctrine of *res judicata* holds that a final judgment on the merits, in a court of competent jurisdiction, bars the same parties or their privies from relitigating the issues that were raised in the prior action, as well as other issues that could have been raised. *Migra v. Warren City School District Board of Education et al.,* 465 U.S. 75, 83–85, 104 S.Ct. 892, 897–98, 79 L.Ed.2d 56 (1984).

Plaintiff filed her initial complaint on April 12, 1990, before Judge Zagel, and amended that complaint on May 22, 1990. The factual

laws through impermissible discrimination in employment based on race and political affiliation, denying plaintiff her first amendment right of association and free speech.
Count VI: alleges that the defendants deprived plaintiff of the equal protection of the laws guaranteed by the Fourteenth Amendment of the Illinois and United States Constitutions.
Count VII: alleges that the Board, the Council, Greeley, Singer, Kimbrough, Sadler, Engelskirchen, Principe, Revollo, Gaytan, Garcia, Carmen Gonzales, Lopez, Maldonado, Morgan, Prado, Reyes, Zapata and Cortes intentionally breached plaintiff's contract created by the 1977 Plan and the contract that the Council voted to extend to plaintiff on April 14, 1990.
Count VIII: alleges that UNO, Pilsen Neighbors, the City, Monteagudo, Fraga, Solis, Victor Gonzalez, Mary Gonzalez, Gaytan, Garcia, Lopez, Maldonado, Morgan, Carmen Gonzales, Prado, Reyes, Zapata and Cortes tortiously interfered with plaintiff's contracts for employment at Pickard School.
Count IX: alleges that the Board, Kimbrough, the Council, Engelskirchen, Gaytan, Garcia, Maldonado, Morgan, Carmen Gonzales, Prado, Reyes, Zapata and Cortes violated the Illinois School Reform Act of 1989 when they took action to replace her as principal on account of her race.
Count X: alleges that the Council, Gaytan, Garcia, Carmen Gonzales, Lopez, Maldonado, Morgan, Prado, Reyes, Zapata and Cortes violated the Illinois Open Meetings Act by conducting meetings of the Council without providing the required notice.
Count XI: alleges that the defendants conspired to terminate plaintiff because of her political affiliation, resulting in a violation of her civil rights.

allegations in that case centered on plaintiff's first suspension from Pickard School. Judge Zagel dismissed plaintiff's claims on the merits on October 16, 1990. *Asllani v. Board of Education for the City of Chicago, et al.,* No. 90 C 2149, 1990 WL 165644 (N.D.Ill. October 16, 1990). Although Asllani's current claims are based in part on facts regarding her first suspension, she now seeks relief for breach of contract, tortious interference with contract, violations of the School Reform Act and the Open Meetings Act, failure to renew her employment contract, and wrongful termination. The critical facts surrounding these claims concern defendants' decision not to renew Asllani's employment contract and her termination. Plaintiff did not become aware of the Council's decision not to renew her contract until May 17, 1990. Her instant complaint includes allegations regarding facts that occurred in late May and June 1990.

■ In order for the doctrine of *res judicata* to apply, there must be an identity of the cause of action between the two actions and an identity of parties or their privies. *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 688 (7th Cir.1986). The cause of action in the two suits are different. The claims before Judge Zagel concerned different issues and were supported by different allegations than those presented in the instant action. In plaintiff's complaint she raises new facts and claims that were not related to the issues before Judge Zagel. In addition, only four of the twenty-eight defendants named in the instant case were named in plaintiff's earlier case before Judge Zagel, and not all of the additional defendants named are privies to parties named in the earlier action. While we agree with defendants, in that the plaintiff is now precluded from raising any claims regarding her first suspension, she is not barred from raising her present claims which concern events unrelated to her complaint filed with Judge Zagel. A plaintiff does not have an on-going duty to update her complaint with allegations concerning new violations that occur after a previous complaint has been filed.

■ Defendants further ask this court to apply the doctrine of collateral estoppel with respect to Judge O'Brien's decision on May 18, 1992. They argue that Judge O'Brien considered and rejected plaintiff's position that Asllani had been awarded a four-year principal's contract on April 14, 1990. On May 18, 1992, Judge O'Brien ruled that the Council was comprised of ineligible members when it voted to renew plaintiff's contract on April 14, 1990, rendering the renewal invalid. As a result of his finding, Judge O'Brien dismissed counts II and IV of plaintiff's fourth amended complaint. Defendants argue that the issue of whether plaintiff's contract was renewed on April 14, 1990, has been actually litigated and decided in the initial action, and therefore maintain that Judge O'Brien's decision should be given preclusive effect.

Under Illinois law a party may "use issue preclusion defensively to bar the assertion of claims that previously have been raised by and decided against the same party who is asserting those claims in the current action." *Charles Koen & Associates v. City of Cairo,* 909 F.2d 992, 999 (7th Cir.1990). A court must determine that "the issue decided in the prior adjudication is identical with the one presented in the case under review; [that] the party against whom estoppel is asserted was a party or in privity with a party to the prior litigation; [that] there has been final judgment on the merits in the former suit, and [that] the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *Stevenson v. City of Chicago,* 638 F.Supp. 136, 142 (N.D.Ill.1986).

In plaintiff's case, the issue decided before Judge O'Brien—whether Asllani's employment contract was in fact renewed on April 14, 1990—is identical with the one presented in the case now before us. In addition, the plaintiff (the "party against whom collateral estoppel is asserted") is the same as in the prior litigation, and she was given a full and fair opportunity to litigate the issue in the prior suit. (Board Mem.Ex. G).

Therefore, the only question that remains is whether there has been final judgment on the merits in the earlier suit. Plaintiff argues that collateral estoppel does not apply until final judgment is entered and maintains

that because three counts remain pending before Judge O'Brien, his decision is not final and his ruling on the renewal of plaintiff's contract is not preclusive. Plaintiff is correct in that Judge O'Brien's decision is not final for appeal purposes. However, " 'finality' for purposes of collateral estoppel is not the same as 'finality' for purposes of determining when an order is appealable or susceptible to reconsideration." *In re Cenco Inc. Securities Litigation*, 529 F.Supp. 411, 416 n. 5 (N.D.Ill.1982); *see also Gilldorn Savings Association v. Commerce Savings Association*, 804 F.2d 390, 393 (7th Cir.1986); *Miller Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir.1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980).

The Seventh Circuit has considered several factors important when determining whether a decision is "final" for collateral estoppel purposes: that the decision was not "avowedly tentative," that the hearing was adequate and the parties were fully heard, that the court supported its decision with a reasoned opinion, and that the decision was appealable or had been appealed. *Gilldorn*, 804 F.2d at 393 (referring to *Miller Brewing*, 605 F.2d at 996). The "relevant question is whether the issue has been resolved in the prior action so that the Court has no good reason to permit it to be litigated again." *In re Cenco*, 529 F.Supp. at 416 n. 5; *see also Gilldorn*, 804 F.2d at 393 (referring to *In re Cenco* ).

The issue presented to Judge O'Brien was whether the contract awarded to the plaintiff on April 14, 1990, was invalid because there were an insufficient number of affirmative votes. (Board Mem.Ex. G, p. 2). Judge O'Brien concluded that the vote taken on April 14, 1990, failed for lack of a majority and therefore was ineffective. (Board Mem. Ex. G at 28–31). Because of that determination he dismissed count II (declaratory judgment as to the rights of plaintiff with respect to the April 14, 1990 meeting) and count IV (breach of contract) of plaintiff's complaint. The transcript demonstrates that the parties were fully heard and that Judge O'Brien's decision was well supported. Although Judge O'Brien's decision is not yet appeal-able, that is not necessarily the determinative factor. For instance, in *Gilldorn* the court held that collateral estoppel applied even though the state court order was interlocutory and not subject to appeal. *Gilldorn*, 804 F.2d at 394. The court noted that "the need for a final judgment [in the case as a whole] is not as compelling when the question is whether the determination of a single issue actually decided in the first action should be given conclusive effect in a later action between the parties on a different claim." *Id.* (citation omitted).

In this case it is of particular importance that the issue of whether the Council's April 14, 1990 vote was valid is a matter of state law, that is, a matter requiring the interpretation of the School Reform Act and Board Rule 6–28 (Rule 6–28). (Board Mem.Ex. G at 6–11). Judge O'Brien, a state court judge, spent a significant amount of time questioning the parties, listening to their arguments and applying the facts before him (and now before us) to Rule 6–28 and the relevant statute. The parties had sufficient opportunity to be heard on the issue and the judge was well advised of the arguments on both sides of the issue, allowing him to make a reasoned decision. In addition, Judge O'Brien dismissed the claims on the merits, which is generally considered to be a "final" decision in Illinois. *See e.g., Charles Koen*, 909 F.2d at 1000; *Speigel v. Continental Illinois National Bank*, 790 F.2d 638, 645 (7th Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); *Schuster Equipment Co. v. Design Electric Services, Inc.*, 197 Ill.App.3d 566, 144 Ill.Dec. 58, 59, 554 N.E.2d 1097, 1098 (Ill.App.1990).

■ The purpose of issue preclusion is to avoid repeated controversy of matters judicially determined, thus saving individuals and courts the burden of relitigating old issues. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327, 99 S.Ct. 645, 649–50, 58 L.Ed.2d 552 (1979). Judge O'Brien's decision regarding the April 14, 1990 vote has been given fair consideration and judicial economy is best served by not now shifting the scene to another courtroom. Issue preclusion applies and Judge O'Brien's decision regarding the

effectiveness of the April 14, 1990 Council vote is binding on this court.

## II. *Tortious Interference with Contract*

In count VIII, plaintiff alleges that UNO, Pilsen Neighbors, the City, Monteagudo, Fraga, Solis, Victor Gonzalez, Mary Gonzalez, Gaytan, Garcia, Lopez, Maldonado, Morgan, Carmen Gonzales, Prado, Reyes, Zapata and Cortes tortiously interfered with plaintiff's "then existing" contract, and with the contract the Council allegedly extended to plaintiff on April 14, 1990. Plaintiff argues that those defendants tortiously interfered with her contract by influencing the Board to suspend and terminate plaintiff because of her race and political affiliation, and also by influencing the Board to violate the provisions of the 1977 Plan and Protective Provisions.

■ Under Illinois law, the essential elements of a cause of action for tortious interference with contractual relations are: (1) a valid contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional and malicious inducement of breach of the contract; (4) breach of the contract caused by defendant's wrongful conduct; and (5) resultant damage to the plaintiff. *Swager v. Couri*, 60 Ill.App.3d 192, 17 Ill.Dec. 457, 460, 376 N.E.2d 456 (Ill.App. 1978); *Williams v. Weaver*, 145 Ill.App.3d 562, 99 Ill.Dec. 412, 417, 495 N.E.2d 1147, 1152 (Ill.App.1986). First, there must be a valid contract. The parties agree that plaintiff had a valid employment contract that ended June 30, 1990. However, plaintiff had no contract extending past June 30, 1990, nor did she have the right to continued employment. Judge O'Brien ruled that the Council's April 14, 1990 vote to renew plaintiff's contract was ineffective. As discussed in section I above, that ruling is binding on plaintiff under the doctrine of issue preclusion and therefore plaintiff's contract was not legally renewed. Plaintiff relies heavily on the 1977 Plan and argues that it provided her with the right to continued employment at Pickard School. According to existing precedent, however, the 1977 Plan was superseded

by the 1980 Consent Decree and Desegregation Plan (the 1980 Consent Decree) for purposes of Title VI. *Dr. Charles E. Keenan v. Board of Education of the City of Chicago*, 812 F.Supp. 780 (N.D.Ill.1992) (holding that the Consent Decree and Desegregation Plan supplants the 1977 Plan as the Board's obligations under Title VI). Accordingly, it provides no promise of continued employment. Therefore, the only valid contract was plaintiff's employment contract terminating June 30, 1990.

Plaintiff is required to allege not only that there was a breach of contract, but also that the breach was caused by defendants' wrongful conduct. Plaintiff alleges that defendants interfered with her employment relationship and influenced the Board, the Council and its members to suspend her, to not renew her contract (or recognize the contract extended on April 14, 1990), and to terminate her. However, plaintiff does not allege that any of these acts (suspension, termination or nonrenewal of contract) constitute a breach of her employment contract that ended June 30, 1990. Because this court finds that the two contracts that plaintiff alleges were breached (the renewed contract and the contract resulting from the 1977 Plan) do not exist, Asllani has not adequately pled that element of her claim. Plaintiff has not alleged that defendants' wrongful conduct caused the breach of her employment contract and count VIII is dismissed.

Plaintiff's breach of contract claim (count VII) alleges that the defendants breached "both [p]laintiff's performance contract that Defendant Pickard Local School Council voted to extend to [p]laintiff on April 14, 1990 and the contract created by the 1977 Plan and its 'Protective Principles.'" Because this court finds that the contracts to which plaintiff refers are non-existent, count VII is dismissed. Furthermore, because the 1980 Consent Decree superseded the 1977 Plan as to the Board's obligations under Title VI, count II, alleging violation of the 1977 Plan for Title VI, is also dismissed.[6]

---

6. We note that the defendants did not move for dismissal of count II or VII. However, this court finds no basis for allowing those claims to go forward.

### III. *Section 1983 Claims*

Defendants argue that plaintiff's § 1983 claims are barred by the relevant statute of limitations because plaintiff filed her complaint in this action on July 1, 1992, more than two years after the alleged discriminatory acts. The statute of limitations begins to run when a reasonable plaintiff knew or should have known of facts that would support a charge of discrimination. *Kuemmerlein v. Board of Education of the Madison Metropolitan School District,* 894 F.2d 257, 261 (7th Cir.1990). In determining when a cause of action accrues, the critical time is when the discriminatory act occurs, "not the point at which the consequences of the act become painful." *Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (holding that the applicable limitations period began to run from the dates when the employees were notified that their appointments would terminate in the future, rather than from the dates of actual termination); *Smith v. City of Chicago,* 769 F.2d 408, 413 (7th Cir.1985).

Plaintiff's § 1983 claims center around Asllani's allegations that she was discriminated against when she was suspended, when defendants voted not to renew her employment contract and when she was terminated. The facts upon which plaintiff principally rely focus on defendants' decision to invalidate the Council's April 14, 1990 vote to renew her contract as well as their subsequent decision on April 25, 1990, not to renew her contract. Plaintiff was aware of her suspensions and the grounds for her suspensions. In fact, pre-suspension hearings were held and plaintiff participated in those hearings. More importantly, plaintiff admits that on May 17, 1990, she was informed that the Council had voted not to extend a contract to her. She also knew that it was the position of the Board that the meeting of April 14, 1990, was deemed to be illegal.

Plaintiff does not dispute those facts, but argues that her claims were based on her termination. Asllani maintains that she did not know she was terminated until she went to her office on July 6, 1990 and was told that

she was no longer the principal at Pickard School. Plaintiff's argument is without merit. Plaintiff admits that she knew the Council's decision not to renew her contract on May 17, 1990. The alleged violations which form the basis of plaintiff's § 1983 claims (the suspension, the non-renewal of her contract, etc.), all occurred prior to July 1, 1990. She knew of those facts and must have known, or at least a reasonable person should have known, that she would not continue as principal after June 30, 1990. Since plaintiff's complaint was filed July 1, 1992, over two years after the alleged violations, plaintiff's § 1983 claims are time-barred and dismissed.[7]

### IV. *Suspension and Termination for Political Reasons in Violation of 28 U.S.C. § 1343*

In count XI, plaintiff claims that defendants conspired to terminate her because of her political affiliation, resulting in a violation of her civil rights under Title VII, the School Reform Act and the 1977 Plan. Asllani contends that this conspiracy is a violation of 28 U.S.C. § 1343. As defendants point out, section 1343 is a jurisdictional statute regarding the filing of civil rights claims and therefore cannot serve as a basis for plaintiff's cause of action.

Although not clearly stated, count XI also attempts to allege that defendants violated plaintiff's first amendment right of free speech and association, by suspending and terminating plaintiff based on her race and political affiliation. Apparently plaintiff is alleging a § 1983 (or § 1985) claim based on defendants' alleged conspiracy to violate her first amendment rights. Assuming that to be the case, plaintiff's claim nevertheless fails since it is barred by the statute of limitations. (*See* discussion in Part III of this opinion). Count XI is dismissed.

### V. *Other Issues*

#### A. *Motion to Stay Proceedings*

Defendants request that this court stay the instant proceeding pending

---

7. The same reasoning would seem to apply to plaintiffs' § 1981 claims. However, because de-

fendants have not made such a motion, we will not address the § 1981 claim at this time.

resolution of plaintiff's state court action. When parallel cases in federal and state courts cover the same issues, a district court may stay federal proceedings when exceptional circumstances exist. *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1287 (7th Cir.1988). Before an action can be stayed, the court must determine that the state and federal proceedings are parallel. This means that substantially the same parties are contemporaneously litigating substantially the same issues in another forum. *Id.* at 1288. In determining if the cases are parallel, the court "look[s] not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Lumen Construction, Inc. v. Brant Construction Co., Inc.*, 780 F.2d 691, 695 (7th Cir.1985).

 In plaintiff's complaint filed in state court, she names the Board, the Council, Principe, Kimbrough, Cortes and Engelskirchen as defendants. In the case now before us plaintiff names twenty-eight defendants, including the City, Pilsen and UNO—who were not named in her state complaint. The addition of defendants, however, does not in itself destroy the parallel nature of the cases. *Interstate Material*, 847 F.2d at 1288. However, the issues presented in the two cases also differ. In her federal case, plaintiff raises at least five additional claims against defendants.[8]

Again, abstention from the "exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation District et al. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1975). Although it is a close call, after a comparison of the federal and state complaints we find that the federal and state actions are not sufficiently parallel to warrant a stay of the proceedings.

**B. *Issues Regarding Specific Defendants***

 Defendants argue that the local school council has no capacity to be sued as a defendant and therefore should be dismissed from these proceedings. Local school councils are bodies created by the Illinois State Legislature pursuant to the Illinois School Reform Act. Ill.Ann.Stat. ch. 122, ¶ 34–2.1–2.3. The powers and duties of local school councils are defined and limited to those specifically stated in the statute. Defendants argue that because local school councils do not have exclusive authority to evaluate, terminate or extend performance contracts to principals under the Act, they are not policy-making boards with the capacity to be sued. The statute, however, states that one of the responsibilities of local school councils is to determine whether the principal's performance contract is to be renewed. Local school councils are therefore policymaking boards with respect to the renewal of principals' employment contracts. Defendants argue that local school councils are not policy making bodies because only the board has the power to ultimately approve principal's contracts and terminate for cause. The fact that a person does not become a principal until the Board approves her contract is of no consequence in plaintiff's case. Plaintiff's case rests almost entirely on the Council's decision not to renew her employment contract and, as stated above, that decision rests within the power of the Council.[9] The Pickard School local school council is a suable entity.

In her complaint, plaintiff alleges that UNO and Solis conspired to violate § 1983 (count IV), tortiously interfered with her con-

---

8. For instance, in her federal complaint plaintiff seeks relief for employment discrimination (count I), violation of the 1977 Plan for Title VI (count II), tortious interference with contract (count VIII), and violation of the School Reform Act and the Illinois Open Meetings Act (counts IX and X). None of these claims were raised by plaintiff in her state law case.

9. We note that defendants also argue that because the statute does not state in plain language that the Council is vested with the power to sue or be sued it is not a suable entity. This argument is without merit. It is not necessary for the statute to state in clear language that the Council is a suable entity, especially in this case where the statute does specifically state that the Council must comply with the School Reform Act, the Open Meetings Act and state and federal laws. Ch. 122, ¶ 34–2.3.

tract (count VIII), and conspired to suspend and terminate her for political reasons (count XI). This court has dismissed each of those counts and therefore it is unnecessary to discuss UNO and Solis' motion for summary judgment. Nevertheless, UNO and Solis have provided evidence demonstrating that they have not been involved in any activities involving Pickard School since at least 1988, and had no involvement in Asllani's suspension or termination. Defendants maintain that they pointed out these facts to plaintiff's counsel months ago. They argue that plaintiff failed to make a reasonable inquiry into whether or not her claims against UNO and Solis were well grounded in fact. Therefore, they request that costs and fees be awarded to them pursuant to Rule 11. Rule 11 sanctions will be considered after plaintiff has the opportunity to submit a memorandum to this court discussing what investigation was performed in order to make a reasonable inquiry into whether UNO and Solis were viable defendants.

## CONCLUSION

For the foregoing reasons, we dismiss the following claims against all parties: the § 1983 claims included in counts IV–VI, the contract claims (counts VII and VIII), the conspiracy claim (count XI) and plaintiff's claim alleging violation of the 1977 Plan (count II).

## MEMORANDUM AND ORDER ON RECONSIDERATION

Plaintiff Sylvia Asllani brings this action against the Chicago Board of Education (the Board); two of the Board's former members (Adella Greeley and William Singer); seven present and former Board employees (Patricia Churchill, Gloria Cortes, Delores Engelskirchen, Ted Kimbrough, Raymond Principe, Tomas Revollo and Dr. Robert Sadler); the Pickard Local School Council (the Council); and nine present or former members of the Council (Ruth Garcia, Brunilda Gaytan, Carmen Gonzales, Lois Lopez, Lourdes Maldonado, Connie Morgan, Ramon Prado, Guadalupe Reyes and Estela Zapata). Asllani alleges that as principal of the Pickard Elementary School (Pickard) she was discrimi-

nated against because of her race and political affiliation. This court dismissed seven counts of this complaint in its memorandum and order of March 29, 1993. Before us now are plaintiff's motion for reconsideration of dismissal of counts II, IV, V, VII and VIII of the amended complaint and defendants' motions to dismiss counts III, IX and X. For the reasons set forth below, plaintiff's motion for reconsideration is denied and defendants' motions to dismiss are granted.

## FACTS

We include here only a brief recitation of the facts in this case since they were set forth in detail in this court's March 29, 1993 memorandum and order.

Asllani, a white female, had been employed by the Board since 1958. She served as principal of Pickard for approximately thirteen years. On April 9, 1990, Kimbrough, general superintendent of the Chicago Public Schools, notified Asllani that he planned to request her suspension for a period not to exceed thirty days. A pre-suspension hearing was held on April 11 and April 13, 1990. On April 18, 1990, the Board met and upon the recommendation of the hearing officer voted to suspend Asllani without pay for 25 school days, beginning April 20, 1990. Defendant Cortes acted as the substitute principal while Asllani served the suspension.

Asllani's contract for employment as principal was for four years, ending June 30, 1990. The Council held a meeting on April 14, 1990, and voted to renew Asllani's contract for another four-year term, commencing on July 1, 1990. That same month Kimbrough declared that the April 14, 1990 meeting was void. On April 25, 1990, the Council conducted a meeting where the defendant members of the Council voted not to renew Asllani's contract. The six members of the Council who voted not to extend the contract were Hispanic. Asllani was not present at the meeting and was not informed until May 17, 1990, that the Council had voted not to renew her contract.

On May 7, 1990, Asllani was notified that she was to be suspended for a second time, pending a hearing. A pre-suspension hear-

ing took place on May 21, 1990, and the hearing officer, defendant Principe, recommended to the Board that Asllani be suspended. Plaintiff was suspended for allegedly conducting and participating in illegal meetings, for allegedly harassing a teacher at Pickard, and for failing to obtain a building permit.

On June 26, 1990, a Council meeting was held and the members voted to extend a four-year contract to Cortes, a Hispanic, for the position of principal at Pickard, effective July 1, 1990. Asllani was not notified of the June 26, 1990 meeting.

When Asllani returned from her suspension on July 6, 1990, she was denied access to her office and was informed by defendant Engelskirchen that she was no longer the principal at Pickard.

## DISCUSSION

Plaintiff moves for reconsideration of dismissal of counts II, IV, V, VII and VIII of the amended complaint. Counts IV and V, Asllani's § 1983 claims, were dismissed in our memorandum and order of March 29, 1993, on the ground that they were barred by the two-year statute of limitations. In count II, plaintiff alleged that defendants violated Title VI, the due process provisions of the Fourteenth Amendment and the Illinois constitution, and the 1977 Plan for the Implementation of Title VI (the 1977 Plan). Counts VII and VIII were Asllani's breach of contract and tortious interference with contract claims. These counts were dismissed on the grounds that Judge O'Brien's ruling that the Council's April 14, 1990 vote to renew plaintiff's contract was void had preclusive effect; that the 1980 consent decree superseded the 1977 Plan and its "Protective Principles;" and that the only valid contract was plaintiff's employment contract terminating June 30, 1990. Asllani contends that the 1977 Plan provided her with a continued right to employment and this right was not superseded by the 1980 consent decree. Moreover, she maintains that because she had a continued right to employment, her § 1983 claims are not time-barred. Accordingly, she asks that this court grant her motion for reconsideration of these claims.

Defendants move to dismiss counts III, IX and X of Asllani's complaint. Count III alleges that the Board, through its agents Engelskirchen, Garcia, Gaytan, Kimbrough, Morgan, Prado, Reyes and Zapata, wrongfully terminated Asllani in violation of 42 U.S.C. § 1981. Defendants contend that Asllani's § 1981 claim is barred by the statute of limitations and must therefore be dismissed. Count IX alleges that the Board, Kimbrough, the Council, Cortes, Engelskirchen, Garcia, Gaytan, Gonzalez, Maldonado, Morgan, Prado, Reyes and Zapata violated the Illinois School Reform Act when they took action to replace her as principal on account of her race. Defendants maintain that no private right of action exists under the School Reform Act and, therefore, count IX must be dismissed. Count X alleges that the Council, Cortes, Garcia, Gaytan, Gonzalez, Lopez, Maldonado, Morgan, Prado, Reyes and Zapata violated the Illinois Open Meetings Act by conducting Council meetings without providing the required notice. Defendants contend that the alleged Open Meetings Act violations are time-barred because more than 45 days elapsed before plaintiff filed her complaint.

## I. Plaintiff's Motion for Reconsideration

### A. Counts IV and V: Asllani's § 1983 claims

Asllani contends that since she never received notice that her right to continued employment under the 1977 Plan ceased to exist, she, as a reasonable person, believed that she would continue as principal after June 30, 1990. She maintains that she did not know of her injury until July 6, 1990, when she attempted to resume her duties as principal and found she was locked out of her office and had been replaced. Asllani therefore argues that her § 1983 claims are not barred by the statute of limitations. We disagree.

As stated in our previous memorandum and order, plaintiff should have known that she would not continue as principal on May 17, 1990, when she learned that the Board voted not to renew her contract. The statute began running on that date, regard-

less of the fact that Asllani may have believed that defendants had violated her alleged continued right to employment under the 1977 Plan's "Protective Principles." The potential availability of other avenues of redress does not toll the running of the statute of limitations. *See Kuemmerlein v. Madison Metro. School Dist.*, 894 F.2d 257, 260 (7th Cir.1990) (stating that "[n]o matter what the chance of recall, a plaintiff's action for employment discrimination stemming from a layoff decision runs from the time of notice, not from the time of actual termination"); *Smith v. City of Chicago*, 769 F.2d 408, 413–14 (7th Cir.1985) (finding that informal lobbying efforts to regain position were not pertinent for purposes of limitations). Because Asllani knew on May 17, 1990 that her contract was not to be renewed and she failed to file her complaint within two years of that date, her § 1983 claims are time-barred.

### B. *Counts II, VII and VIII:*

■ This court reiterates that the 1980 Consent Decree and Desegregation Plan (the 1980 Consent Decree) superseded the 1977 Plan for purposes of Title VI. Thus the "Protective Principles" of the 1977 Plan provided no promise of continued employment to Asllani—the only valid contract was her employment contract which terminated on June 30, 1990. Accordingly, no claim for breach of contract or tortious interference with a contract resulting from the 1977 Plan can be maintained. Similarly, because the 1977 Plan is no longer operative, there was no Title VI violation under that Plan. We deny plaintiff's motion for reconsideration of the dismissal of counts II, VII and VIII.

Departing from the usual practice on a motion to dismiss, this court looked beyond the pleadings and examined Asllani's motion for reconsideration, her lengthy appendices in support of the motion and several other documents. After careful consideration, we have determined that the 1980 Consent Decree was intended to supplant the 1977 Plan. We therefore adhere to the ruling in our March 29, 1993 memorandum and order and again choose to follow Judge Aspen's holding in *Keenan v. Board of Educ.*, 812 F.Supp. 780 (N.D.Ill.1992).

The 1977 Plan was developed by the Board, the Department of Health, Education and Welfare (HEW), and the Department of Justice, after eight years of negotiation and litigation. The Plan constituted an agreement between the Board and HEW outlining the obligations of the Board pursuant to Title VI relating to faculty integration, assignment of principals and bilingual educational services for students.

Despite the Board's good faith efforts to comply with the 1977 Plan, however, the United States filed suit in September 1980, charging the Board with discrimination in the "assignment of students and otherwise." In 1979 and 1980, HEW found the Board ineligible for funding under the Emergency School Aid Act because the Chicago Public School System was characterized by segregated and overcrowded schools. The Department of Education affirmed this finding. The Board responded by entering into the 1980 Consent Decree with the United States. Under the Consent Decree the Board agreed to formulate a comprehensive desegregation plan. This desegregation plan would encompass the same subject matter as the 1977 Plan, namely bilingual education and faculty assignment; however it would also address student desegregation. The "Protective Principles" of the 1977 Plan, which protected faculty from dismissal or transfer for discriminatory reasons, were not included in the 1980 decree. The Consent Decree was approved by Judge Shadur in 1980 and the resulting desegregation plan withstood constitutional challenge. *See United States v. Board of Educ.*, 554 F.Supp. 912 (N.D.Ill.1983).

After examining the transcript of the proceedings before Judge Shadur, of which we can take judicial notice, and the text of the Consent Decree and the 1977 Plan, both of which are relied on in the pleadings, it seems clear to this court that the 1980 decree was intended to replace the 1977 Plan.

In the transcript of the hearing in which Judge Shadur considered and adopted the 1980 Consent Decree, Mr. Drew Days, speaking on behalf of the United States, stated:

The [consent decree], in essence, reflects the Board's final determination that the

undertakings that were made several years ago ... deserved to be honored and they are reflected in this agreement. . . . (Plf. mot. for recons., app. P, p. 14). Thus, Days indicated that the 1977 Plan was incorporated into the 1980 Consent Decree. Mr. Robert Howard, speaking on behalf of the Board of Education, stated that he wanted "to associate [him]self with the thrust of Mr. Days' comments." *Id.* Mr. Howard made no mention of any continued viability of the 1977 Plan, although he did correct those of Days' statements which he perceived as inaccurate.

The 1977 Plan stated that it could be modified by written agreement (1977 Plan at 6, ¶ 2)—the Consent Decree was this modification. It provides that "[b]oth parties agree that this Consent Decree is final and binding as to the issues resolved herein." Consent Decree at 3, ¶ 7. The "Protective Principles" were not included in the Decree. The omission of the "Protective Principles" could be the result of a number of things, but can likely be attributed to the Board's experiences under the 1977 Plan and its efforts to learn from and improve on that plan. In any event, the "Protective Principles" were omitted and Asllani cannot now rely on them. Instead, the Consent Decree requires the Board to

> make every good faith effort to follow professional staff assignment and transfer practices which, when taken together as a whole on a frequently reviewed periodic basis, will assure that the racial composition, the experience and the educational background of individual school faculties and administrative staff more nearly approach [plus or minus ten percentage points of city-wide averages for race, experience and training for each type of school facility] the city-wide proportions of minority, experienced, and more extensively trained professional staff. . . . The Board will not adopt or follow assignment and transfer practices which will foreseeably result in the racial identifiability of schools based on faculty or administrative composition.

Consent Decree at 18–19, ¶ 3.2.

Significantly, the Department of Education's Office of Civil Rights (OCR), which is responsible for enforcing Title VI of the Civil Rights Act of 1964, found in 1991 that the 1977 Plan was superseded for Title VI purposes by the 1980 Consent Decree, and that the Consent Decree prescribes the Board's obligations with respect to the assignment of principals. *Keenan v. Board of Educ.,* 92 C 0177 (Def. mot. for summ. jdgmt. App. E). We defer to the OCR's determination. Given the language of the Consent Decree, the modification provision of the 1977 Plan, the transcript of the proceedings before Judge Shadur and the OCR's findings, this court must conclude that the 1980 Consent Decree supplants the 1977 Plan.

It is true that the 1980 Consent Decree was not a desegregation plan itself, but rather an agreement to develop and implement a systemwide plan to remedy the effects of past segregation of black and Hispanic students. However, this does not mean that the 1977 Plan has continued viability. If anything, the Consent Decree set the guidelines for faculty integration and bilingual education and it was left to the Board's discretion whether to adopt more specific mandates in the future. The Board did not choose to enact another set of protective principles for faculty.

Asllani contends that because the Board continued to refer to the 1977 Plan in documents promulgated after the 1980 Consent Decree, the Board reaffirmed the "Protective Principles," giving her a continued right to employment. This court disagrees. The Consent Decree provides that it is final and binding as to all issues addressed therein. Consent Decree at 3, ¶ 7. The Board failed to include the "Protective Principles" when it entered into this contractual agreement. Although the Board certainly could have chosen to incorporate the "Protective Principles" of the now defunct 1977 Plan into its post-Consent Decree contracts with faculty, thereby creating legal rights under those principles, there is no evidence that the Board has done this. Asllani points to a 1990 agreement between the Board and the Chicago Teacher's Union as proof of such incorporation; however, this document merely contains a reference to teachers who were trans-

ferred *in 1977* in compliance with the 1977 Plan. The other documents Asllani relies on are similarly lacking. While the 1977 Plan is at times referred to, Asllani has failed to produce a document which expressly reaffirms the "Protective Principles." Assorted general references to the now inoperative 1977 Plan do not create contract rights. Moreover, many of the documents Asllani refers to were promulgated after her dismissal and therefore cannot be said to afford Asllani any rights.

Because Asllani cannot maintain an action for breach of contract or tortious interference with a contract resulting from the 1977 Plan, counts VII and VIII were properly dismissed. Additionally, because the 1980 Consent Decree superseded the 1977 Plan as to the Board's obligations under Title VI, count II, alleging violation of the 1977 Plan, Title VI and the due process provisions of the Illinois and United States Constitutions was properly dismissed.[1]

## II. *Count III: Asllani's § 1981 claims*

 Defendants argue that Asllani's § 1981 claims are barred by the relevant statute of limitations because she filed her complaint in this action on July 1, 1992, more than two years after the alleged discriminatory acts. This court dismissed plaintiff's 42 U.S.C. § 1983 claims in its memorandum and order of March 29, 1993 on the ground that they were time-barred. For the same reasons expressed in that opinion, we dismiss Asllani's § 1981 claims as well.

 The statute of limitations begins to run when a reasonable plaintiff knows or should know of facts that would support a charge of discrimination. *Kuemmerlein,* 894 F.2d at 261. To determine when a cause of action accrues a court must look at when the discriminatory act occurs, "not the point at which the consequences of the act become painful." *Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981)

(holding that the applicable limitations period began to run from the dates when the employees were notified that their appointments would terminate in the future, rather than from the dates of actual termination); *Smith v. City of Chicago,* 769 F.2d at 413.

As stated above and in our previous memorandum and order, Asllani should have known that she would not continue as principal when she was told on May 17, 1990 that the Council voted not to renew her contract. She knew that Kimbrough had declared that the meeting of April 14, 1990, where the Council voted to extend another four-year contract to her, was illegal and void. Asllani must have known, and a reasonable person should have known, that she would not continue as principal after June 30, 1990. Since Asllani's complaint was filed July 1, 1992, over two years after the alleged violations, her § 1981 claims are time-barred and dismissed.

## III. *Count IX: Asllani's Illinois School Reform Act Claims*

 Defendants contend that count IX should be dismissed because the Illinois School Reform Act (Reform Act), 105 ILCS 5/34–1.01 *et seq.* (Michie 1993), does not provide a private right of action for Asllani. This court finds that the Reform Act is not remedial in nature and that Asllani, as principal, was not an intended beneficiary of the Act; therefore, no private right of action exists for Asllani, and count IX is dismissed.

Section 5/34–2.3(2) of the Reform Act prohibits discrimination on the basis of race, sex, creed, color or disability unrelated to ability to perform in connection with the selection of a candidate to serve as principal. The Reform Act is silent as to remedies for violations. Asllani maintains that defendants violated section 5/34–2.3(2) when they refused to renew her contract. She contends established procedures for the employment, evaluation and termination of principals. Asllani

---

1. Part of count II and all of count VIII could also be dismissed under 745 ILCS 10/8–101, which sets a one year statute of limitations on all civil actions brought against local entities or their employees, whether based on the common law, statutes or Constitution of Illinois. Since Asllani

filed her claim in excess of two years after her cause of action arose, her due process claims under the Illinois constitution (count II) and her tortious interference with contract claim (count VIII) are time-barred.

argues that without a private right of action no adequate remedy exists for principals who are discriminated against in violation of the Reform Act and that a private right of action is necessary to give meaning to the rights created in the Act. We disagree.

Under Illinois law, a private right of action will be implied when necessary to compensate an aggrieved plaintiff who belongs to the class of persons whom the statute was designed to protect. *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill.2d 379, 59 Ill.Dec. 905, 908, 432 N.E.2d 849, 852 (1982). Courts should imply a private remedy only when there exists a clear need to effectuate the purposes of an act. *Id.*, 59 Ill.Dec. at 909, 432 N.E.2d at 853. Additional factors to consider are whether the plaintiff's injury is one the statute intended to prevent and whether it is consistent with the underlying purpose of the statute to imply a private cause of action. *Parra v. Tarasco, Inc.*, 230 Ill.App.3d 819, 172 Ill.Dec. 516, 519, 595 N.E.2d 1186, 1189 (1992); *Board of Educ. v. A, C and S, Inc.*, 131 Ill.2d 428, 137 Ill.Dec. 635, 654–55, 546 N.E.2d 580, 599–600 (1989).

The School Reform Act was enacted to improve the quality of education in public schools. The Illinois legislature, in passing the Act, did not seek to redress societal wrongs being committed against principals but sought instead to reform the public school system by increasing community involvement in the nondiscriminatory administration of the schools. Students are the intended beneficiaries of the Reform Act, not principals. While the Act's purpose may serve public policy, that purpose alone is not enough to imply a private right of action; we must determine whether the Act is remedial in nature. *Davis v. Dunne*, 189 Ill.App.3d 739, 136 Ill.Dec. 1015, 1017, 545 N.E.2d 539, —— (1989). The Reform Act does prescribe procedures for the employment, evaluation and termination of principals; however, it is regulatory in nature, not remedial. While the Act protects principals in its observance, it does not, in its breach, provide a civil remedy for principals. The Reform Act simply was not designed to remedy the type of injury alleged by Asllani. *See Ahern v. Board of Educ.*, 1992 WL 373030 (N.D.Ill.) (dismissing seven public school principals' School Reform Act claims on the ground that no private right of action exists for principals).

While the Reform Act does not provide a remedy for Asllani, she could have sought relief under the Illinois Human Rights Act, 775 ILCS 5/1–101 *et seq.* Moreover, her Title VII claims are still before this court. She is not without a remedy for her alleged injuries. Accordingly, Count IX is dismissed.

## IV. Count X: Asllani's Open Meetings Act Claims

Finally, defendants contend that Asllani's Open Meetings Act claims are time-barred because more than 45 days passed before she filed her claim for violation of the Act. This court agrees and dismisses count X.

The Illinois Open Meetings Act, 5 ILCS 120/1 *et seq.* (Michie 1993), provides:

Where the provisions of this Act are not complied with, or where there is probable cause to believe that the provisions of this Act will not be complied with, any person, including the State's Attorney of the county in which such noncompliance may occur, may bring a civil action in the circuit court for the judicial circuit in which the alleged noncompliance has occurred or is about to occur, or in which the affected public body has its principal office *prior to or within 45 days after the meeting alleged to be in violation of this Act or within 45 days of the discovery of a violation by the State's Attorney.* (emphasis added)

Asllani contends that the meetings on January 30, 1990, April 25, 1990, and all subsequent meetings up to and including June 26, 1990, were conducted in violation of the Open Meetings Act. She admits that she filed her claim more than 45 days after the occurrence of these meetings. However, she maintains that her filing is still timely because there has been no discovery of a violation by the State's Attorney.

Aurora Fuentes and Eva Gonzalez, then members of the Pickard Local School Council, sent a letter dated April 6, 1990, to the Cook County State's Attorney requesting an investigation of an alleged violation of the

Open Meetings Act that occurred on January 30, 1990. The State's Attorneys office, in a letter dated May 15, 1990, acknowledged receipt of this letter and informed Ms. Fuentes and Gonzalez that it intended to look into the matter. Because no findings have been announced by the State's Attorney in regard to the alleged violation, Asllani contends that her complaint is still timely. In support of this contention, plaintiff cites *Safanda v. Zoning Bd. of Appeals,* 203 Ill.App.3d 687, 149 Ill.Dec. 134, 136, 561 N.E.2d 412, 414 (1990), *app. denied,* 136 Ill.2d 554, 153 Ill. Dec. 384, 567 N.E.2d 342 (1991), where the court stated that the record contained no evidence that the State's Attorney ever discovered the occurrence of the meeting and, because of that, the 45–day period after such discovery had not run and plaintiff's complaint was timely.

We feel that the *Safanda* court misinterpreted the Open Meetings Act when it said that the clock did not run until the State's Attorneys office found a violation of the Act. Under *Safanda,* a plaintiff could wait ten years to file a claim and it would still be deemed timely if the State's Attorney never discovered a violation. The plain language of the statute does not support such an interpretation. The Act provides for three time periods in which to file a claim: 1) before the meeting is held; 2) within 45 days of the violation; or 3) within 45 days of the discovery of a violation by the State's Attorney. For the third time period to be applicable, the State's Attorney must have actually *found* a violation; if such a violation is found, then any person, including the State's Attorney, has 45 days in which to file a claim. If no violation is found by the State's Attorney, prospective plaintiffs must either file before the violative meeting is held or within 45 days after the meeting. Here, no violation was found by the State's Attorney. Asllani admits that she filed her complaint more than 45 days after the alleged violations, consequently, her Open Meetings Act claims are time-barred and count X is dismissed.

### CONCLUSION

For the reasons hereinabove stated, plaintiff's motion for reconsideration of dismissal of counts II, IV, V, VII and VIII is denied and defendants' motions to dismiss counts III, IX, and X are granted.

## MEMORANDUM AND ORDER ON SECOND RECONSIDERATION

Before this court is the second motion for reconsideration filed by plaintiff Asllani. The facts of this dispute were recited in this court's memoranda and orders of March 29, 1993 and October 26, 1993, and will not be once again repeated. For the following reasons, Asllani's motion for reconsideration is denied.

### DISCUSSION

 Asllani moves for reconsideration of dismissal of counts II, III, IV, V, VII, VIII and IX. In light of the substance of this second motion, the court feels that a discussion of the proper grounds for making such a motion is warranted. Motions for reconsideration serve a limited function. They are ordinarily granted only to correct clear errors of law or fact or to present newly discovered evidence that could not have been adduced during the pendency of the motion. *Publishers Resource v. Walker–Davis Publications,* 762 F.2d 557, 561 (7th Cir.1985); *In re: Oil Spill by the Amoco Candiz,* 794 F.Supp. 261, 267 (N.D.Ill.1992). Such motions cannot be used to raise legal arguments or present evidence that could have been adduced during the pendency of the original motion. *Oil Spill,* 794 F.Supp. at 267. Moreover, motions for reconsideration are not at the disposal of parties who want to "rehash" old arguments. *Id.* In these times of increasingly overcrowded dockets, litigants should be wary of wasting judicial time and resources with successive motions for reconsideration which, in effect, do nothing but express dissatisfaction with a prior ruling and ask the court to change its mind.

As a preliminary matter, the court notes that while Asllani has asked the court to reconsider dismissal of count IX, she failed to present any grounds for reconsideration. Count IX alleges violations of the Illinois School Reform Act (Reform Act). The court, in its memorandum and order of October 26, 1993, found that no private right of action

exists under the Reform Act. Asllani has not produced any evidence or argument that suggests that the Reform Act provides a private right of action for her and the court finds no basis for such a conclusion. The motion for reconsideration is denied as to count IX.

## I. Counts III, IV and V

Asllani contends that counts IV and V should not have been dismissed as time-barred because she did not believe until July 6, 1990, when she was informed that she was no longer principal of Pickard School, that the Board would stand by the Local School Council's (LSC) May 17, 1990 decision not to renew her contract.[1] However, this second motion for reconsideration merely rehashes arguments that were previously made before this court and were rejected. While Asllani has perhaps gone into greater detail this time around, the arguments are the same. Sections 1981 and 1983 have a two-year limitations period. The statute begins to run when a reasonable person knows or should know of facts which support a charge of discrimination. *Kuemmerlein v. Madison Metro. School Dist.*, 894 F.2d 257, 261 (7th Cir.1990). The potential availability of other avenues of redress does not toll the running of the statute of limitations. *Id.* at 260. Thus, the clock began to run when Asllani learned that the LSC had voted not to renew her contract, despite the fact that she believed that the Board would fail to honor the LSC's allegedly illegal decision. Asllani was told on May 17, 1990, that her contract had not been renewed and she filed this action on July 1, 1992, more than two years later. Therefore, her section 1981 and 1983 claims are time-barred.

1. While plaintiff asked the court to reconsider dismissal of count III in her second motion for reconsideration, she did not include count III with the arguments for reconsideration of counts IV and V. Because count III, Asllani's 42 U.S.C. § 1981 claim, was dismissed for the same reasons that counts IV and V, her 42 U.S.C. § 1983 claims, were dismissed, it seems proper to consider these three counts together.

2. 745 ILCS 10/8–101 provides that:
[n]o civil action may be commenced in any court against a local entity or any of its employees for

## II. Count VIII

In count VIII, Asllani contends that the defendants tortiously interfered with her existing contract with Pickard School and with the contract extended by the LSC on April 14, 1990. This claim is barred by the one-year statute of limitations provided for in the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1–101 *et seq.*[2] All of the actions taken by the LSC and the Board that Asllani complains of took place in 1990: the April 14, 1990 LSC meeting where Asllani was extended a new contract was declared void; and during April and May 1990 she was suspended, replaced and informed that her contract was not renewed. However, as noted above, Asllani did not file this action until July 1, 1992. Thus, the one-year limitations period expired before Asllani filed suit. As previously held, count VIII is time-barred.

## III. Counts II and VII

Counts II and VII involve Asllani's contention that she had contract rights under the "Protective Principles" of the 1977 Plan for the Implementation of the Provisions of Title VI of the Civil Rights Act of 1964 (the 1977 Plan), and that these rights were breached by the LSC and the Board. Count II alleges breach of the 1977 Plan itself and count VII alleges breach of a contract created by the 1977 Plan. Asllani asks this court to reconsider its determination that the 1977 Plan and its Protective Principles were superseded by the 1980 Consent Decree entered between the Board and the United States. In support of her contentions, she has attached numerous documents promulgated by the Board which she claims demonstrate that the 1977 Plan is still operative.[3] This court disagrees.

any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued. For purposes of this Article, the term "civil action" includes any action, whether based upon the common law or statutes or Constitution of this State.

3. Documents of this nature are generally not considered on a motion to dismiss for failure to state a claim, as they are beyond the scope of the pleadings. However, the court did consider similar documents when rendering a decision on Asllani's first motion for reconsideration, and for

The court remains convinced that the 1980 Consent Decree superseded the 1977 Plan. The Consent Decree expressly provides that it is final and binding as to the issues it addresses. Although it includes a section that addresses faculty assignment and transfer, it does not contain a provision that incorporates the Protective Principles. The Department of Education's Office of Civil Rights (OCR), which is responsible for enforcing Title VI of the Civil Rights Act of 1964, found in 1991 that the 1977 Plan was superseded for Title VI purposes by the 1980 Consent Decree, and that the Consent Decree prescribes the Board's obligations with respect to the assignment of principals. While the Board indicated that it wished to incorporate the 1977 Plan into the 1980 Consent Decree, and the desegregation plan that was to follow (see plf. exh. O), the court thinks that the Board was referring to the *goals* of the 1977 Plan, not to each of the 1977 Plan's specific mandates. To hold otherwise would ignore the specific language of the Consent Decree, which provides that it is final and binding as to all issues resolved therein. The 1980 Consent Decree and resulting Desegregation Plan (adopted in 1981) deal with bilingual education and faculty assignment—the areas previously addressed in the 1977 Plan. Thus, the 1977 Plan was supplanted by the 1980 Consent Decree and the 1981 Desegregation Plan.

This does not mean that the Board could not choose to incorporate portions of the now defunct 1977 Plan into later contracts or resolutions. The Board may find, and may in fact have already found, that certain portions of the 1977 Plan should be followed as a matter of policy even though not part of the 1980 Consent Decree. While the documents submitted do at times refer to aspects of the 1977 Plan, the language does not create contract rights in the Protective Principles that Asllani attempts to rely upon. The motion

the same reasons will consider the documents attached here. Asllani could probably amend her pleadings to refer to these documents, given the liberal amendment allowed under Rule 8 of the Federal Rules of Civil Procedure. To do so, however, would result in additional delay and expense for the parties. Moreover, the complaint has already been amended once and, in its

for reconsideration is denied as to counts II and VII.

## CONCLUSION

For the reasons stated above, the motion for reconsideration is denied.

current state, is immense and rather difficult to follow. The court feels that the interests of judicial economy are best served by not requiring Asllani to amend her complaint at this time, particularly because we have decided to deny the motion for reconsideration of the dismissal of counts II and VII. Count I, the Title VII claim, is the only claim that remains.